Our next case this morning is Alliance for Water v. Fryer, Alliance for Water Efficiency, excuse me, v. Fryer. Good morning, Your Honors. May it please the Court, Christopher W. Katzenbach appearing for the defendant and appellant James Fryer. Your Honor, this case, in this case we're both seeking restitution, we have a claim for restitution following reversal on the prior appeal and a claim for attorney's fees on the prior appeal. We've gone through both of those issues involved. We think straightforward questions that the district court simply did not apply discretion in his appropriately, appropriately on the facts of this case and in both cases we believe that this is a matter where both attorney's fees and restitution are required. As to the attorney's fees, we believe that the evidence here is that we were the prevailing party, that in fact we had the unusual situation where the defendant receives $25,000 in additional from the plaintiff in the underlying case and the evidence before the district court was simply and directly that Mr. Fryer settled to get this case behind him so he could finally publish the report that he had already written, had circulated, and he was simply waiting for the last opportunity for people to comment on. But that doesn't mean you prevailed on the merits on a copyright claim. Well, of course we did. No, you settled the case, everybody compromised and went their separate ways. That's not a, you're not a prevailing party pursuant to a settlement. Yes, we are because under the CRST case, the Supreme Court has expressly noted that the goals of the defendant are different than the goals of a plaintiff. That a plaintiff may seek to have an exchange of money or something like that, but a defendant seeks to simply resolve a case and in that case, resolving a case where the other side gets not a smidgen of the copyright stuff that they were claiming in the underlying case is prevailing. The problem, Your Honor, and to say that we're not prevailing because it's a settlement is to make the error that saying it says that every settlement is not a prevailing, a party can never prevail through settlement. Well, the Supreme Court long ago rejected that argument. I see nothing that means that in CRST that revives that. In fact, CRST I think directly addresses this point in saying that the goals of defendant and the goals of a plaintiff are different. And where defendant completely defeats a copyright act claim, in other words, they come to court with saying we have a copyright in your work. They don't have the one piece of paper, the one piece of paper that would establish a copyright claim, namely a written agreement saying that it's work made for hire. They know they don't have it and we point out they don't have it and they settle this case without getting a single copyright act issue, not a single right to anything, not a single prevention of what Mr. Fryer was writing, which the prior appeal noted was the goal of this case was to prevent Mr. Fryer from publishing his report. They get none of that. How can it be that we're not prevailing through that settlement? Everybody walked away. There was no judicial imprimatur of your position in the copyright action. It doesn't have to be judicial approval. That's what the case law requires in order to be a prevailing party for purposes of a fee-shifting statute. No, it does not. It does not. That's the Buckhannon case. Buckhannon requires a judicial imprimatur of something, but it doesn't require judicial ruling on the merits. In other words, we have a judgment in this case and that judgment would have issue preclusion effect for any future claims to copyright to Mr. Fryer's work. Clearly final judgment, issue preclusion. If they came to us tomorrow and said we own your report, we own your work, you can't publish it, we could put that judgment down and say issue preclusion, you lost that. You don't have that. So that's clearly judicial imprimatur. The decision on the appeal was clearly a judicial ruling that the settlement did not include the obligation to remove people that the judge had ordered. That's judicial ruling. Well, right. There have been judicial rulings on questions of settlement interpretation, contract interpretation, but nothing, the settlement did not include any merits resolution of the copyright claim. Everybody just walked away and the only questions that have actually been litigated here are questions of settlement interpretation. No. That's, again, I don't believe that's correct because the prior appeal expressly noted that there was no jurisdiction under the Copyright Act. That wasn't a ruling on the copyright claim. Yes, it was, Your Honor, because by saying that they had not alleged or shown the facts necessary for a work made for hire claim is a ruling on the merits of that. How else could it be? If we're saying that they are alleging work made for hire and they don't have the evidence, that's clearly a ruling that they neither alleged nor shown that they had the evidence to support a Copyright Act claim or to have jurisdiction on that issue. I don't see how it can be read, with respect, Your Honor, I don't see how it can be read any other way. The fact that the prior appeal referred both to allegations and showings indicates it was not just looking at the pleadings but rather was looking at what had been shown in the district court. This arose, as you court is aware, after we'd made a motion to dismiss on that very grounds. So it seems to me, Your Honor, to say that the parties, as you say, walked away is not accurate because in looking at this from a defendant's perspective, which the court must, when somebody makes an allegation of copyright claims to your work and says, we own it, you don't, and they walk away and you own it and they don't, that seems to me winning in every way a copyright defendant conceivably want to win in a case. And why would a copyright defendant, to be entitled to attorney's fees, need to have some judicial ruling on the specific copyright claim in order to be prevailing under CRST? It seems to me that the Supreme Court has completely rejected that somewhat, that narrow notion of what a prevailing defendant is. It seems to me that CRST means that when the plaintiff comes to court and says, we want stuff and they don't get it, however the defendant keeps what they have, however a defendant defeats that claim, whether it be settlement, by litigation, by ruling on another issue or ruling on an issue not relating to the merits, say standing, issue preclusion, any other issue that you could raise, it seems to me that they have prevailed. And in the terms of, so that strikes me as given the CRST case in the Supreme Court, we have prevailed on every meaningful way of that term and the district court erred in not applying that and instead looking at this notion that just because it's a settlement, there was no, there can't be a prevailing party. I think that that is simply dead wrong. It seems that your main problem here is who published first. That is correct. And the problem I have with that is that I guess I get confused about who so-called had a right to publish first. You just mentioned before everything was all wrapped up, you even had people look at it and whatever, and all of a sudden the other side, I guess, publishes. And then your big complaint is you lost a lot of publicity and opportunity, you meaning your client, lost a lot of opportunity to really be an expert and a lot of people come to him and make some money. And I, that's why this, when you get this settlement, it's one of a lot of things away from the copyright and down to this really an issue of who's on first and it may be an unfortunate thing what your client got, but he didn't publish his first. Well, Your Honor, if they had published two months, three months, four months, five months, six months, seven months, eight months after the settlement, you know, I could sort of see that argument. They published a year after the settlement. And the reason they were able to publish was because of the district court's injunction against the content of my client's report. So the fact that my client's report was virtually finished, including, as we pointed out in the district court and shown, with the very language in the acknowledgment section acknowledging the participation of all the water professionals, and that the court said we couldn't publish, that the fact that he then couldn't publish that report delayed things for a year while this appeal, the prior appeal was pending.  The question is what changed between the day of the settlement, which was the whole purpose of what so he could publish, and what then happened because of the court's injunction. And it was the court's injunction that prevented him from publishing. In other words, it took the situation where he could go forward with a completely written report ready to go and ready to do where they had no data. They didn't even have the basic data and certainly nothing written. And then the court then blocks him from publishing while they can then put their report together. And it's that effect. In other words, it's not a level playing field situation, it's the court's order tilting the playing field against my client and preventing him from publishing that leads to the issue of restitution. In other words, if things had just been the way they were March 13th, if that had just gone forward on that basis, he would have been able to publish immediately because it was already written. So it was the effect of the court's order prohibiting him from publishing with the acknowledgment section that he wanted that prevented him from publishing, and that that's the court order. And that erroneous court order, which this court set aside, that is what the issue is on the restitution. And so it's not a question of what. It's a question of the effect of the court order, and that's all it is. So at this point, Your Honor, if the court has no further questions of me, I will sit down and reserve whatever time I have left. That's fine. Thank you. Mr. Wicks. Good morning. May it please the Court, David Wicks on behalf of the Alliance for Water Efficiency. The issue in this case is actually quite straightforward. It is did the district court abuse its discretion in denying the motion for attorney's fees and the motion for restitution? And as this court is well aware, an abuse of discretion standard is a high hurdle to It does not occur simply because reasonable people can differ on the facts. It is not an abuse of discretion because Mr. Fryer may be able to pull out selective facts in his support of his case and make a case on his behalf. It does not occur if two reasonable people look at the same facts and come up with a different conclusion. What instead Mr. Fryer must prove in order to prevail in this appeal is that the district court's decisions were fundamentally wrong, and he has failed to do that in this particular case. On the contrary, the district court in this case wrote two lengthy opinions in response to both motions consisting of 54 pages in which he articulately set forth the basis for his decisions, the facts in support of his decisions, and the case law in support of his decisions. I would submit that this is as far a cry from abuse of discretion as you can possibly get. With respect to the motion for attorney's fees, Mr. Fryer seeking fees under the Copyright Act, Section 505, for the appeal, claiming that he prevailed in the prior appeal on a Copyright Act issue. As the district court correctly found, the underlying appeal that was before this court previously did not involve issues under the Copyright Act. It involved contract interpretation and what the scope of the settlement agreement was and whether the district court was acting appropriately in entering an injunction prohibiting Mr. Fryer from listing certain sponsors and funders in the acknowledgment section of his report. It did not involve anything involving copyright issues, copyright infringement, or anything of the like. In fact, there was no dispute that there was a settlement agreement. No one in this case, Mr. Fryer included, has ever challenged the fact that as of March 13, 2014, there was a settlement agreement between the parties, including a settlement agreement on all copyright issues, both ways. The only issue is whether Mr. Fryer was able to identify certain PAC members, project advisory committee members, in his report, who the alliance was preparing its report on behalf of. The district court carefully analyzed that issue and wrote a lengthy opinion explaining it. There is nothing at that time that would suggest that there were any copyright issues involved under the Copyright Act. In fact, as mentioned, those had been settled and as the court noted, they were never even litigated. The only thing that was ever mentioned in the prior appeal in this case and in Mr. Fryer's under the Copyright Act, and this court previously had ruled that based upon the allegations in the complaint, there wasn't subject matter based on the Copyright Act, but there was diversity jurisdiction. That was it. That was the extent of the mention of the copyright, and that's the only thing that was ever mentioned about this case under the Copyright Act. None of that, by the way, was litigated because the case settled before the alliance even was required to file a response to Mr. Fryer's motion to dismiss on subject matter grounds. So to suggest that there was this idea that the parties litigated something under the Copyright Act is just incorrect. The issue with respect to the Santa Rosa data was the other issue that was addressed on that was not part of the Copyright Act, had nothing to do with the Copyright Act, and was not part of the prior appeal. It's also important to note in the prior appeal that Mr. Fryer didn't frame his arguments under the Copyright Act. His arguments were based about First Amendment and contractual interpretation issues, and the court pointed that out in ruling that this was not a case where Mr. Fryer prevailed on the appeal under anything related to the Copyright Act. And because of that, I think the district court did not abuse its discretion in determining that there was no Copyright Act issues involved in the appeal, and therefore Mr. Fryer is not entitled to his fees as a prevailing party under the Copyright Act. But the court went beyond that. It said even if Copyright Act issues were part of the first appeal, the district court did not abuse its discretion in denying the motion for attorney's fees because Mr. Fryer was not a prevailing party under the Copyright Act. He wants to suggest, and he's brought up in his appeal and here again today, that the alliance didn't get anything. But if you look at what the alliance brought this case about, it was to rid itself of a all the underlying data for, even though the alliance was one of the major funders and had paid him to prepare this report, he refused to turn it over. And the reason the alliance brought this case was so that they could get the right to publish their own report, which is exactly what they got as a result of the settlement. The fact that Mr. Fryer was allowed to, as part of this settlement, continue with his report does not mean he defeated everything with respect to the copyright. In fact, you could argue that he actually gave up rights under the copyright. He wants to claim that he owned that and he had all the copyright acts, all the infringement rights with respect to that report. And yet, as part of the settlement, he agreed that the alliance could use the exact same data and create its own report. So to suggest- Was there a contract for all the work that he did and was getting paid for? Between the alliance and Mr. Fryer? Employment contract of any kind? Yeah. I don't believe there was. Okay. So whatever he's getting paid and he's doing a lot of research and doing a lot of other things and writing, I guess what you're saying, he doesn't own that. He was doing it under some employment agreement to dig all this stuff up. Yeah. There were agreements between the alliance and the entities that provided the funding for this project. And those funds were being used to pay Mr. Fryer to create the work, to get all the data, to do all the things that he was doing to create this report. The report, he provided the draft report. It was peer-reviewed. It came back with a negative peer review, a substandard peer review. At that point, the alliance decided, hey, we'd like to get more involved with this. We'd like to get the data. We want to bring somebody else. We're not getting good reviews from the peer review people. At that point, Mr. Fryer took the position that he owned everything. Everything was his. He was going forward with it regardless. And that's what led to the first lawsuit. It immediately settled within three months where the agreement was, Mr. Fryer, you go your way, draft whatever you want to draft, provide us with all the data. We're going to go our way, draft what we want to draft. Everybody got something. Right. And that's what the agreement was. And then there became a dispute, and that was all read into the record. Then there was a dispute as to whether Mr. Fryer could, in the acknowledgment section of his report, state that his report was sponsored by the people that the alliance was doing its report for. And that's what the whole dispute was that went up to this court previously and had nothing to do with anything under the Copyright Act. So it doesn't support anything with respect to those fees. And as far as restitution goes, there is a real issue as to whether this is even a case that involves restitution. Because what we have is that Mr. Fryer did not provide anything of benefit as a result of the injunction that was entered by the district court that was later vacated. He claims that he had to turn over the Santa Rosa data. But as the district court noted, the injunction itself didn't have anything in it that required the turnover of data. So the fact that that vacated injunction, or that the injunction was vacated, does not support a claim for restitution with respect to the data because it didn't address the data. And as the district court pointed out, the Santa Rosa data had already been agreed to be provided by Mr. Fryer. And the court specifically went through the agreement that was read into the record on March 13, 2014, and pointed to the specific language that was used that said Mr. Fryer will turn over all utility data to the alliance subject to any data that required a confidentiality release. Mr. Fryer admits, and as the district court pointed out several times, he did not have a confidentiality agreement with the city of Santa Rosa. Apparently that came as a surprise to everybody, didn't it? It did. Everybody thought that there was a confidentiality agreement? Well, certainly the alliance did because Mr. Fryer was to provide us with the list of all the utilities that were providing him, that he had a confidentiality agreement with, and they were on the list. But when the alliance went to try and get a release, they were like, we're not going to give you a release of Mr. Fryer. We don't have an agreement with him. And he brought that up in his brief where he's trying to make an issue that it was an abuse of discretion because the district court said that this was unexpected, but at the same time said it was part of the agreement that they wouldn't have to get a release for Santa Rosa. Well, it certainly can be unexpected in the context that Your Honor just raised by saying, well, we didn't expect it, but that doesn't mean that it automatically takes it out of the scope of the settlement agreement, which was all data was going to be turned over and then there was certain data that the alliance would need to get releases for. The city of Santa Rosa was not one of them. And the judge went through that in detail. It certainly was not an abuse of discretion for him to rule that it was a part of the restitution. The other thing that, other than that, as a result of the injunction, the alliance didn't gain anything that it didn't already have pursuant to the settlement agreement. The settlement agreement allowed the alliance to publish its own report in the way it saw fit. That's what it did. So for Mr. Fryer now to come in and say that this injunction somehow, or that the alliance benefited from the injunction, which is what he needs to establish in order to be entitled to restitution, it's not there. Was that delay of the injunction, the time that that was abated, whatever, I'm just looking at who was able to act first. Was he prevented from doing something that he didn't be able to publish? No, the injunction did not prevent him from publishing. Mr. Fryer could have published at any time and acknowledged the fact that he was doing a report on behalf of the California Water Reclamation District. He could have done that at any time. He chose not to because he wanted to include these other people in his acknowledgment, but there wasn't anything about the injunction that prevented him from publishing the report that he had. In fact, as we went- By including the other people, would that have added some authentication to it? Is that what he was thinking? That's his argument, but I think it's purely speculative. There's nothing in the record that would suggest that that is a basis for restitution in this case because as we pointed out during this time, California was in the midst of a major drought and his supporter was the California Water Reclamation District. You would think that would be perfectly fine for him to go forward with that as opposed to having somebody from Colorado or Texas supporting that. The injunction did not prevent him from going forward, but more importantly, the injunction and the fact that it was vacated didn't provide any additional benefit to the alliance. The alliance had the right under the settlement agreement to move forward and publish its report at any point it wanted to. As the district court pointed out, there is nothing in the settlement agreement that provides a priority for who's going to publish when and in what order. More importantly, as I just mentioned, the basis upon which Mr. Fryer is now seeking restitution is purely speculative. There's nothing in the record that would suggest that he would have gotten more publicity or that the alliance got more publicity or whatever. I don't think we even get to that because there's nothing in the settlement agreement that addresses it, but certainly if you were to find that there was some sort of benefit conferred upon the alliance as a result of the injunction that was then entitling Mr. Fryer to restitution because that injunction was vacated, there's no evidence in the record to support a $100,000 claim that he's being made in this case. And I see that my time is up, so if your honors don't have any further questions, we would just ask that the district court's decisions be affirmed. Thank you. Mr. Katzenbach. The first point I'd like to direct your attention to what CRST says, I'd direct your attention to page 43 of our brief, and I point out to you that in the CRST case, the court expressly states a defendant seeks to prevent an alteration to the extent it is in plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the subject of merits of penalties for allocations. The defendant, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed. Irrespective of the precise reason for the court's decision, the defendant may prevail if the court's final judgment rejects the plaintiff's claims for non-merits reasons. I think that holding of the Supreme Court is dispositive. There does not have to be a Copyright Act ruling at all to be a prevailing party. The question is whether or not Friars rebuffed AWE's claim of exclusive ownership to the property. That's a copyright claim. A copyright claim is a claim for exclusive ownership, and when AWA brings a copyright claim, it is doing nothing other than claiming a right to exclusive ownership of Mr. Friars' work. There is no other reason to bring a Copyright Act claim. There's no other Copyright Act claim that you can make if you're not making an exclusive claim to the work. So the fact that they did not get their exclusive claim not only is shown by a comparison of what they got to what they claimed, but is by the very nature of a Copyright Act thing. As to the prior appeal, it is irrelevant to—it has long been settled that in enforcing your rights under a settlement or any other—or under the law, you don't have to get additional rulings on the merits. It's enough, for example, that the enforcement action flows out of the underlying case. That's been commonly done, for example, in enforcement of consent decrees. You don't get new rulings on the merits. You're simply enforcing this consent decree. It's commonly done, and we've cited many cases where courts have repeatedly ordered enforced attorneys' fees for enforcement action. This isn't a consent decree situation. Huh? We don't have a consent decree here, clearly. Well, a settlement is a consent decree as well, and a judgment is issued in this case. No, those are two very different things, procedurally. But there is a judgment in this case. Right, but a consent decree is an order of the court. You don't have a consent decree here. But we do have a judgment. You have an oral settlement. But we do have a judgment, Your Honor. You do, but the consent decree cases have no application here. Well, Your Honor, but then we have numerous other cases involving enforcement of settlement agreements. We've cited it in our brief. We're involving all sorts of situations where the actual resolution doesn't inquire a redetermination of anything on the merits. But as we pointed out in CRST, we don't have to have, to be prevailing, we don't have to have a resolution on the merits. And if we don't have to have a resolution on the merits in the underlying case, it wouldn't make any sense to say we had to get a new resolution on the merits when we're trying to enforce this case. It's like saying that you have to, that if we don't, if we prevail here by defeating a copyright claim, we don't have to litigate the copyright claim each time we say our rights are being violated. In terms of, but in terms of the, so the prior appeal was to enforce the deal, but that deal was to enforce the rights that Mr. Fryer retained and defeated against the copyright claim. Didn't the settlement say anything about ownership? Excuse me? The settlement. Did that determine ownership? Yes, because he didn't give up any ownership. Then he owned it. The fact that he was going to be able to. Wasn't he paid to get all of that? No. This was a project he developed. He's put together. The alliance's role is reflected in numerous documents attached to the complaint. Their role was fiscal agent. In other words, they were administering grant funds. In other words, grant funds were going to a nonprofit. And then they were paying them back out to Fryer. And he was an independent contractor, as they allege in the complaint. There's not a word, for example, when they say he was employed, there's not a word employee doesn't appear in their complaint. He was an independent contractor doing this as part of a project he developed. We put all that evidence in and all this evidence about the dispute and all this other stuff is evidence that we put into the record from Mr. Fryer's declaration, emails, and other factors. What is upsetting to me is that AWE continues to rely only on its own allegations in its complaint and has never once, in response to any motion that we have made, including our motion for restitution, presented evidence to support any of their allegations. In other words, I want to say that it's not right to get restitution. Why don't they put in some evidence on that point? Why do they come here and say, just go back to their allegations in their complaint? Thank you, Counselor. Your time has expired. Thank you, Your Honor. The case is taken under advisement.